(36 Misc. Rep. 427.)

### In re EAST ONE HUNDRED AND THIRTY–FIFTH STREET.

(Supreme Court, Special Term, New York County.   December, 1901.)

1. MUNICIPAL CORPORATIONS — NEW YORK CITY—STREETS — CONDEMNATION OF LAND—AWARD TO UNKNOWN OWNERS.

Where owners of land on both sides of a street, after conveying everything but the land in the street, convey the lands on the south side of the street to the mesne grantee, "together with all right of any nature or kind in and to the adjacent streets and avenues," before confirmation of the report of commissioners to condemn land for the street, it is not so certain that the mesne grantee is not entitled to an award for the lands taken on the north side of the street as to render it improper for the commissioners to make an award to unknown owners.

2. SAME—DEEDS—CONSTRUCTION.

Where a deed referred to a plat, and reserved "the streets laid down on said map, and two lots conveyed," etc., and granted to the party of the second part the right to lay down and keep on any of the lands excepted or referred to as laid out along the line of and adjoining the Harlem Railroad for a street, a railroad track, and tracks for the passage of steam and other carriages, and the map referred to showed the property as intersected by three streets running approximately at right angles to the land of the Harlem Railroad Company, and the map showed an uncolored strip of land running along the southerly side of the railroad property, which was not designated by name as a street, such strip should be construed to be the land on which the railroad tracks were authorized; and hence the deed did not authorize the use of the other streets running at right angles for railway purposes.

Proceedings for the opening of East 135th street, New York City. Motion to confirm the report of commissioners of estimate and assessment granted.

John Whalen, Corp. Counsel, for confirmation of report.

Thomas S. Bassford, for certain claimants.

Charles Stewart Davison, for owners.

Henry H. Sherman, for claimant Jordan L. Mott.

SCOTT, J.   A motion is made to confirm the report of commissioners of estimate and assessment.   Various objections are made, some of which merit discussion.   The street, as legally opened, is 80 feet in width, including an old highway, never legally opened, but dedicated to public use, 50 feet in width; the 30 feet additional width consisting wholly of land lying along the northerly side of the old highway.   Under the statutes and the proceedings taken by the city authorities, the title of the property included within the lines of the street vested in the city on September 1, 1896, on which date the property on both sides of the street belonged to the claimants Belmont and Luttgen.   They therefore became at that time entitled to the award to be made for so much of their property as was taken for the street, consisting of a plot numbered 1 on the commissioners' map, of only nominal value because theretofore dedicated to public use as a highway, and to lots numbered on said map 16, 17, and 18, lying wholly north of the center line of the old highway, and also north of the center line of the new street.   Substantial awards have been made for two of these lots to unknown owners, the third constituting part of another intersecting dedicated street.   The claim-

ants Belmont and 'Luttgen insist that their right to receive these awards is so clear that the report should be returned to the commissioners, with instructions to make the award to them. As has been said, Belmont and Luttgen owned the plots when title vested in the city. This gave them the right to receive the award therefor, unless they have since conveyed away that right. That they have so conveyed it is insisted by the Harlem Transfer Company, also a claimant. After the title had vested in the city, and while the condemnation proceedings were progressing, Belmont and Luttgen conveyed the land on both sides of the street to the Buena Vista Realty Company, expressly omitting from the deed all lands within the street. This deed left Belmont and Luttgen still entitled to receive the awards for the lands taken for the street. On February 1, 1898, the Buena Vista Realty Company conveyed to the Harlem Transfer Company the land lying on the south side of the street, "together with all the right of any nature or kind of the party of the first part in and to the adjacent streets and avenues"; and on the same date Belmont and Luttgen, by a full-covenant warranty deed (except a covenant of seisin), also granted and released to the Harlem Transfer Company the same premises by the same description, "together with all right of any nature or kind of the party of the first part in and to the adjacent streets and avenues." The contention of the Harlem Transfer Company is that this latter deed operated as an assignment of the right to receive the awards for the property taken for 135th street; that right being the only interest which the grantors then had in that street, or in the property described in their deed. Without now expressing any opinion as to the rights of the respective claimants to these awards, it is apparent that the right of Belmont and Luttgen is not so obviously clear as to justify an instruction to the commissioners to make the award to them. Magee v. City of Brooklyn, 144 N. Y. 265, 39 N. E. 87. As the award now stands, the right to receive it can be judicially determined in an action brought for that purpose. Greater New York Charter (Laws 1897, c. 378) § 1001. A further claim is made by Belmont and Luttgen that the commissioners have not made a sufficient award for the extinguishment of a supposed right on the part of the abutting owners to lay railroad tracks on or across that portion of the old highway upon which the property formerly owned by them abuts. The property in question, together with other adjacent property, formerly belonged to Gouverneur Morris, who on April 28, 1848, conveyed it to Jordan L. Mott. Morris' deed conveyed a tract of land bounded on the west by low-water mark on the Harlem river, and on the north by the property of the Harlem Railroad. It referred to a map on file in the office of the county clerk at White Plains, dated June 4, 1845, and made by Andrew Findlay, surveyor. The deed excepted and reserved out of the plot of ground included within its metes and bounds "the streets laid down on said map, and the two lots conveyed by the said Gouverneur Morris to Joseph Lodge," and granted to the party of the second part, his heirs and assigns, forever, "the right and privilege to lay down and keep on any of the land herein excepted or referred to as laid out along the line of and

adjoining the Harlem Railroad for a street, a railroad track or tracks for the passage of steam or other carriages; it being stipulated that such use thereof shall be in such manner as not to prevent the use of said street of other persons according to the design with which it was laid out." The map referred to shows the property as intersected by three streets running at an angle approximately a right angle to the land of the Harlem Railroad Company, Mott street, Orange street, and Cherry street, the second of which, afterwards known as "Edsall Street," is now part of 135th street. On the map these streets are uncolored, the land between them being colored green. The map also shows an uncolored strip of land running along the southerly side of the Harlem Railroad property, of unequal width; being apparently 16 feet wide in front of the westerly portion, and somewhat wider in front of the easterly portion, of the land conveyed. This strip of land is not designated by name as a street, although, from the fact that it remained uncolored, it may be assumed that it was intended to be excepted from the grant. The deed itself bears internal evidence that it was the intention of the grantor to reserve this strip as a street. The boundary line of the property conveyed runs along the southerly side of the Harlem Railroad "until it comes to a point in the side of the said railroad adjoining the said lot heretofore conveyed to the said William Findlay; * * * thence south, 39 degrees 15 minutes east, along the said lot heretofore conveyed to said William Findlay, crossing a street the southeasterly side of which is fifty-four feet from the center line of said railroad." The description of the lots excepted from the deed as having been previously conveyed to Joseph Lodge is by number, as 7 and 8 on the map, "measuring, when taken together, fifty feet front on said street adjoining the railroad." A comparison of the deed with the map shows that the street through which the course above quoted runs, and the street upon which lots 7 and 8 front abut, is the uncolored strip of land above referred to, lying between the railroad and the property colored green upon the map. There can, therefore, I think, be no doubt that this uncolored strip, of unequal width, running along the whole length of the property, and along the land of the Harlem Railroad, was, although not entitled a "street," intended by the grantor to be reserved as a street, in the same manner that the other named streets were reserved. It seems to be equally clear that it was along this street that he conveyed the right to lay down tracks. The right is to lay down and keep the tracks "on any of the land herein excepted or referred to as laid out along the line of and adjoining the Harlem Railroad for a street." This description exactly fits the strip already referred to, and does not fit any other street shown on the map, for none of them are laid out along the line of and adjoining the Harlem Railroad. Consequently no right was given to lay down railroad tracks on Orange street, now part of 135th street, except across the end thereof at its intersection with the unnamed street laid out along the Harlem Railroad.

Jordan L. Mott on September 22, 1852, conveyed to the New York & Harlem Railroad Company a portion of the property thus acquired by him. The plot so conveyed ran along the line of the

·railroad from the Harlem river to Smieman (formerly Cherry) street, extending back from the railroad a sufficient distance to include the intersection of Edsall (formerly Orange, now 135th) street with a street running along the railroad; thus including the only part of Orange street as to which his grantor, Morris, had given the right to lay down and maintain tracks. This deed excepted and reserved the streets shown on the map attached to the deed, and granted the right to lay down and keep tracks "on any of the land herein ex-·cepted or referred to as laid out along the line of and adjoining the line of the lands of the party of the second part." By this deed, therefore, Mott conveyed to the railroad company all the right that he himself had acquired from Morris to lay down and maintain rail-·road tracks across Orange (now 135th) street at its intersection with the unnamed street laid out, and excepted from the deed along ;the line of and adjoining the railroad company's land. In 1864 Mott ·conveyed to Francis G. Cairns the remainder of the property which he had acquired from Morris, and the claimants Belmont and Lutt-gen derive their title by a series of mesne conveyances from Cairns; and obviously, unless ·Cairns acquired in some way the right to lay down tracks, no such right has been acquired by the claimants. As ·has been pointed out, Morris never conveyed to Mott the fee to the streets shown as laid out on the map referred to in his deed, but ·expressly excepted them from the grant. Mott therefore acquired no greater interest in them than accrues to the abutting owner of :land lying along a dedicated highway. This certainly does not in-·clude the right to lay down and maintain railway tracks. Whatever ·right of that nature he obtained was limited to the irregular street laid out and shown upon the map along and adjoining the land of the railway. This right or privilege he conveyed to the railroad ·company in his conveyance of the land lying along the railroad com-pany's property. He had never acquired the right to lay tracks along Orange or Edsall (now 135th) street, or across it, except at the intersection with the street lying along and adjoining the rail-road. Consequently when he made his deed to Cairns he had no rights left to lay down tracks which he could either exercise himself or grant to another. He seems to have been conscious that his power to grant such right was at least doubtful. · The deed to Cairns is accompanied by a map upon which the property conveyed is col-ored yellow, and the streets formerly known as "Orange" and "Cherry" are colored blue, and Orange or Edsall street is marked "highway." The deed describes the portion colored yellow by metes and bounds, and then grants "all the right, title, and interest of the said party of the first part to the fee of the pieces of land colored blue on the said diagram, subject to any right over, upon, and to the same acquired by any·party or parties whatever, and reserving the right of way over ,and upon the parcel colored blue and desig-nated 'highway' on said diagram as a road or highway, but giving and granting to the party of the second part all the right, title, and interest which the said party of the first part may have to lay an iron track for a railroad on the said piece of land designated high-way." It is to be noted that the attempted grant of the right to lay

tracks on so much of Orange street as is shown upon the diagram attached to the deed is expressed in very guarded language. It does not even assume that the granter then had any such right which he could transfer to his grantee, but merely undertakes to give any right which said grantor "may have." In point of fact, as has already been pointed out, he had not then, and never had, any right to lay down tracks upon that portion of Orange or Edsall street which was affected by and referred to in his conveyance to Cairns. Consequently Cairns took no such right by his deed, and the claimants, who trace their title through Cairns, have not acquired and never possessed the right to lay down and maintain tracks on that portion of 135th street upon which the property formerly owned by them abuts. The commissioners were right in not including in the award any sum for the destruction of this supposed right, which in fact never existed.

The objections raised by other property owners do not involve any question as to the principle adopted by the commissioners in making their awards and assessments, but are directed solely to criticisms of the amounts of certain assessments for benefit. After a careful examination of the testimony and consideration of the briefs, I am unable to say that the assessments complained of are so obviously unfair and excessive as to call for interference by the court. All the objections must therefore be overruled, and the motion to confirm the report granted.

Objections overruled and motion granted.